# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

IN RE:     **MARK CAREY AND**            **CHAPTER 11**
            **LISA DUGAS COMEAUX**        **CASE NO.  15-20865**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## THIRD AMENDED PLAN AND DISCLOSURE STATEMENT

**NOW INTO COURT**, through undersigned counsel comes MARK CAREY AND LISA DUGAS COMEAUX , Debtor(s)-in- Possession, who presents the following Combined Plan and Disclosure Statement:

On the 6th day of October, 2015, MARK CAREY AND LISA DUGAS COMEAUX, (COMEAUX ) filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana, Lake Charles Division.

After the filing of the bankruptcy petition, COMEAUX was authorized to continue in business under the protection of the Bankruptcy Code and to attempt to work out an arrangement with creditors on a plan for the repayment of his debts. This document explains how COMEAUX proposes to pay creditors. If the Bankruptcy Court approves this plan, the creditors' rights to collect their debt will be limited by federal law (the Bankruptcy Code). If the plan is approved, creditors will only be allowed to collect from COMEAUX as provided in this document.

# 1. Why did  MARK CAREY AND LISA DUGAS COMEAUX file this Bankruptcy Case?

In September of 2010 Mr. Comeaux went to work for Apex Freight Services, Inc. ("Apex") with a salary of $263,000.00.   Mr. Comeaux was terminated on the 25th day of September 2014. Upon termination Apex made an agreement to pay Mr. Comeaux $250,000.00 to buy out his contract of employment.  Payments were to be made to Mr. Comeaux on a monthly basis.   Because of the status of the oilfield Mr. Comeaux was not able to obtain employment with a like salary. Apex defaulted on payments to the Comeauxs.   The Comeauxs were forced to seek protection by filing this case.

## ASSETS OF THE DEBTOR (LIQUIDATION ANALYSIS)

Mr. COMEAUX  owes a home in Lafayette, Louisiana, basic household goods and furnishings, two (2) vehicles and two (2) boats.  Subsequent to the filing of this case, Mr. Comeaux settled his employment contract buy out claim against Apex Freight Services, Inc. for a gross amount of $100,000.00 which will increase the distribution to general unsecured creditors.   The Debtors estimate that the net Apex settlement amount value available after a set aside of 40.00% or $40,000.00 for state and federal income taxes is $60,000.00.  A motion to retroactively approve the settlement of this claim is being filed concurrently with this Second Amended Plan and Disclosure Statement.  The following is a list of assets.

| Asset | Value | Exempt | Lien/MTG | Value to Estate |
|-------|-------|--------|----------|-----------------|
| 317 Trailwood | $300,000.00 | $35,000 | yes | $0.00 |
| Time Share | $0.00 | no | yes | $0.00 |
| 2012 Suburban | $30,000.00 | no | yes | $0.00 |

| | | | | |
|---|---|---|---|---|
| 2015 Honda | $25,000.00 | no | yes | $0.00 |
| 2013 Pontoon Boat | $33,000.00 | no | yes | $0.00 |
| 2005 Tracker Boat | $ 50000.00 | no | no | $5,000.00 |
| Clothing | $1,500.00 | yes | no | $0.00 |
| Wedding Rings | $2000.00 | yes | no | $0.00 |
| Checking acct. | $500.00 | no | no | $500.00 |
| Furnishings | $5,000.00 | yes | no | $0.00 |
| Watches | $2,500.00 | no | no | $2,500.00 |
| Firearms | $500.00 | yes | no | $0.00 |
| Apex Freight severance package | $100,000 | no | no | $60,000.00[1] **$68,000.00** |

Estimated Administrative
Fees/Costs-Subject to Court Approval ($15,000.00)
**Liquidation Value:** **$ 53,000.00**

## 2. **What has happened since the Bankruptcy Case was filed?**

The Debtor has filed schedules with the Bankruptcy Court that are believed to list all assets and Debts.  These Schedules included an election by the Debtor to be treated as a Small Business. As a result of same, the Debtor is entitled to file this combined Plan and Disclosure Statement and set same for hearing on an abbreviated basis.  William Vidrine with VIDRINE LAW FIRM, A.P.L.C. withdrew as counsel for Debtors and the Bankruptcy Court approved the application of Rodd C. Richoux, RICHOUX LAW FIRM, L.L.C., as general counsel for the Debtors.  The debtor

---

[1]The value to the estate reflects a reduction of the gross amount by 40.00% or $40,000.00 for estimated 2016 federal and state income tax liability.

was authorized to continue to pay Honda Financial Services.  A bar date was set by the court as December 31, 2015  which was notice out to all creditors. As discussed above, the Mr. Comeaux Mr. Comeaux settled his employment contract buy out claim against Apex Freight Services, Inc. for a gross amount of $100,000.00.  A motion to retroactively approve the settlement of this claim is being filed concurrently with this Second Amended Plan and Disclosure Statement.   On November 4, 2016, this Bankruptcy Court entered an Order lifting the Automatic Stay in favor of Hilton Resorts Corporation with respect to the timeshare being surrendered by the Debtors and commonly known as the timeshare located at 11272 Desforges Avenue, Orlando, FL 32836. The Debtor has filed monthly operating reports,  Mr.  COMEAUX's work is consistent and all post petition  taxes, fees and costs are paid.  The Debtor maintains an average positive cash flow.

## 3.   How does  COMEAUX  propose to pay his debts?

### a. The Creditors are divided into classes

The Bankruptcy Code requires  COMEAUX  to divide its creditors into classes.  Creditors with the same legal rights must be put into the same class.  In this case, each secured creditor (a creditor with a lien or mortgage on movable or immovable property) has different legal rights, so each secured creditor is put in a separate class.  The Debtors'  Bankruptcy Lawyer and Accountant are put in a separate category for administrative creditors, creditors who have assisted with this Bankruptcy Case.  Priority tax creditors and other Claims of taxing authorities are also put in a separate category.  All other creditors, the "unsecured creditors," are also placed into a separate class with the option to convert their claim to a convenience class for a reduced early lump sum payout.

**b. How much and when does MARK CAREY AND LISA DUGAS COMEAUX . propose to pay creditors?**

This disclosure statement and plan outlines COMEAUX 'S proposed payment schedule to creditors.

All of the Assets of the Reorganized Debtor, including all furniture, fixtures, equipment, intangibles, movable property and immovable property will remain in the possession of COMEAUX free and clear of any mortgage, lien, judgment and/or other encumbrances, none of which will be recognized and maintained under this plan, unless provided for herein.

The United States Trustee's fees do not require allowance by the Court. Both pre-confirmation and post-confirmation UST fees shall be paid in cash and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions. The Debtor will be required to continue to file monthly operating reports and/or disbursement reports and shall pay quarterly fees to the UST until this case is closed, converted or dismissed. The reports shall be filed on the same frequency as operating reports were filed according to the Debtor In Possession Order.

**Administrative Claims**– Administrative claims, including claims of COMEAUX 's lawyer and accountant, will be paid in full in cash on the effective date of the Plan. Administrative claims are subject to Bankruptcy Court approval. Debtor attorney fees are estimated to be $15,000.00.

**Priority Tax Claims**– COMEAUX does owe priority claims. This class is impaired. All priority tax creditors will be paid the full amount of their priority tax claims within five (5) years from the entry of the order for relief. The first payment will be thirty (30) days after the effective

date of the plan and payments thereafter will occur on a monthly basis. **The Effective date of the plan is defined as the date the Confirmation Order is entered.** Interest will continue to accrue on the priority claims at the federal statutory rate unless otherwise specified herein.

If the reorganized debtor substantially defaults on the payments of a tax due to the IRS under the plan, the entire tax debt still owed to the IRS shall become due and payable immediately, and the IRS may collect these unpaid tax liabilities through the administrative collection provisions of the Internal Revenue Code.

A failure by the reorganized Debtors ("Debtors") to make a payment due under the confirmed plan or due on any tax for post-confirmation tax period while making the installment payments due pursuant to the terms of the Plan to the Louisiana Department of Revenue shall be an Event of Default. Failure to declare an Event of Default upon occurrence does not constitute a waiver by the Louisiana Department of Revenue's right to declare that the Debtors are in default.

The Louisiana Department of Revenue will give the Debtors written notice of the Event of Default at the address listed on the Debtors' Chapter 11 Petition or the Debtors' most recent filed tax return, with a copy to the Debtors counsel. The Debtors may cure such default within fourteen (14) days from the receipt of such notice. If the reorganized Debtor fails to cure the default within fourteen (14) days after receipt of written notice of default, then the Louisiana Department of Revenue may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies allowed under state law or any other applicable non-bankruptcy law; and/or ( c) seek such relief as my be available from any state of federal court of competent jurisdiction.

All unpaid priority tax claims remain non-dischargeable after confirmation pursuant to 11 U.S.C. § 1141(d)(2), and the debtors and any property of the debtors shall remain liable for all unpaid priority tax claims after confirmation. Additionally, to the extent that any liability is dischargeable, and except in accordance with 11 U.S.C. § 1141(d)(5)(B), the Debtor shall not receive such discharge until the court grants a discharge upon completion of all payments under the plan as provided by 11 U.S.C. § 1141(d)(5)(A).

**Notwithstanding any other provision of the Plan to the contrary,** the Bankruptcy Court shall not retain jurisdiction with respect to pre-petition tax claims except for (i) resolving the amount of any state tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

Taxes Due:

**Internal Revenue Service: Priority claim of $14,425.83 with annual interest at the federal statutory rate.**

**State of Louisiana: Priority claim of $111.99 with annual interest at 6.9996%**

**Class 1.  Secured  Claim of Wells Fargo Home Mortgage:**

Wells Fargo holds a first mortgage on the Debtor's residence.  This class is impaired.  The Debtor owes pre petition and post petition arrears.  The on-going regular monthly payment of $2,131.97 will be paid directly by the Debtors beginning with the January 2017 monthly payment. This loan and monthly mortgage payment amount contains an escrow for property tax and insurance.  This will continue to be an escrow loan with Wells Fargo timely paying the property tax and insurance when required.  On-going regular monthly payments shall only be applied to on-going regular monthly payments and shall not be applied to in arrearages pursuant of 11 USC 524(I).

Arrearages to the following named Wells Fargo shall be paid in installments from funds available for distribution monthly, non-cumulative. Installments shall begin ninety (90) days after the entry of the confirmation order and shall be sufficient to pay in full the arrearages upon completion of the plan:

Arrearages:

Pre Petition: $2,852.02

Post Petition: Post Petition arrears through December 2016: $23,458.19; and,

> Post-petition advances $6,533.32 (consists of: 12/14/15 county taxes $1,759.39, 12/15/15 city taxes $510.93 and 6/8/16 insurance $4,263.00).

> Total Post Petition arrears: $29,991.51.

Pre Petition and Post Petition Arrearages total $32,843.53 and will be paid together at the monthly combined rate of $548.59 per month for 59 months plus one final equalizing payment in month 60 in the amount of $511.53. These payments are to be applied to the Pre Petition Arrearages first. Once all Pre Petition Arrearages are paid then these payments are to be applied to the Post Petition Arrearages.

Arrearage payments shall only be applied to the arrearages and not applied to the on-going regular monthly payments pursuant to 11 USC 524(I).

Confirmation of the plan shall impose an affirmative duty on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust on the principal residence of the Debtors to do all of the following:

(1) To deem the mortgage contractually current as of the filing of this bankruptcy for the purpose of accounting for post petition payments. This is subject to and contingent on successful

completion of mortgage cure payments and regular monthly mortgage payments under the plan. And will preclude the imposition of late charges or other default related fees, charges, or costs based solely on pre petition default.

(2) To apply the "on-going" post-petition monthly payments paid by the trustee or by the debtors to the month in which each payment was designated to be made under the plan. The payments shall be applied only to the on-going monthly mortgage payments as designated, and to interest, principal and escrow only. Any post-petition monthly payments that may accrue between filing and the beginning month stated shall be treated as post-petition arrearage. Any additional post-petition charges or assessments, (other than principal, interest, insurance, and taxes), including, but not limited to miscellaneous costs, expenses, assessments, or other charges which increase Debtor's liability to the creditor, must be approved by the Court prior to being assessed to, charged to, or otherwise added to Debtor(s) account.

(3) To apply the payments received from the trustee or from the debtors on the pre-petition and post-petition arrearages, if any, only to such arrearages. For purposes of this plan, the "pre-petition" and "post-petition" arrears shall include all sums included in the "allowed" proof of claim and shall have a "0" balance upon entry of the Discharge Order in this case.

(4) Should there be a adjustment to the monthly note payment amount, the secured creditor must comply with Local Bankruptcy Rule 3002-1.

(5) If the debtors pay the cure amount specified in the plan or in such lesser amount as may be established by the creditors proof of claim, while timely making all required post-petition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the holder to recover any amount alleged to have arisen prior to the filing of petition. At the

15-20865 - #149  File 01/27/17  Enter 01/27/17 12:55:21  Main Document  Pg 9 of 22

conclusion of the plan, any remaining indebtedness will continue until paid in full.

### Class 2.  Secured Claim of Honda Financial Services:

The claim of Honda Financial Services is secured by the 2015 Honda Accord.  This class is unimpaired and the Debtor will continue to pay the note.

### Class 3.  Secured Claim of Iberia Bank:

The claim of Iberia Bank is secured by the 2012 Chevrolet Suburban.  This class is impaired. The debtor will pay $30,000.00 at 5.25% over 60 months.  The remaining portion of the claim is unsecured and will be treated as a general unsecured claim.  The monthly payment of $570.00 will begin 30 days after the effective date of the plan.

### Class 4.  Secured Claim of Hilton Resorts Corporation:

The claim of Hilton Resorts Corporation is secured by a time share commonly known as the timeshare located at 11272 Desforges Avenue, Orlando, FL 32836.  This class is impaired.  The Debtors will surrender the time share to Hilton Resorts Corporation in full satisfaction of the debt. The Bankruptcy Court entered an Order lifting the Automatic Stay with respect to this timeshare on November 4, 2016.

### Class 5: Secured Claim of Essential FCU (Dow):

The claim of Essential FCU is secured by a pontoon boat.  The stay has been lifted.  The Debtors will surrender the boat to the creditor.  This class is impaired.  The creditor will be allowed to file a deficiency claim which will be treated as a general unsecured claim.

## Class 6: General Unsecured Claims:

The following general unsecured creditors have filed timely claims:

| Creditor | Claim Number | Unsecured Claim Amount |
|---|---|---|
| Internal Revenue Service | 1 | $ 1,324.68 |
| Iberia Bank | 3 | $10,692.16 |
| Louisiana Department of Revenue | 5 | $       2.72 |
| Capital One Bank | 6 | $ 6,049.37 |
| Capital One Bank | 7 | $ 1,653.55 |
| Capital One Bank | 8 | $ 1,132.06 |
| Wells Fargo Bank | 10 | $ 6,287.08 |
| Wells Fargo Bank | 11 | $ 1,492.15 |
| Wells Fargo Bank | 12 | $ 2,801.83 |
| American Express | 14 | $ 1,545.03 |
| Comenity Capital Bank | 15 | $ 4,557.49 |
| Quantum 3 Group | 16 | $ 4,026.52 |
| Synchrony Bank/ Recovery Management Systems | 17 | $    261.63 |
| Synchrony Bank/ Recovery Management Systems | 19 | $ 6,408.75 |
| Synchrony Bank Recovery Management Systems | 20 | $ 2,065.32 |
| Synchrony Bank Recovery Management Systems | 21 | $    583.22 |
| Synchrony Bank Recovery Management Systems | 22 | $ 5,320.29 |

| | | |
|---|---|---|
| Synchrony Bank | 23 | $5,372.14 |
| Recovery Management Systems | | |
| Essential FCU F/K/A Dow | 25 | $17,896.02 |
| Mark Ralph Tammariello & Leslie Tammariello individually and on behalf of their minor child Mark Rafaele Tammariello | 26 | <u>$23,300.00</u> |

**Total Timely Filed/Allowed General Unsecured Claims:$102,772.01**

This class is impaired.  The Debtor proposes to pay $10,600.00 in five (5) annual payments to General Unsecured Claims.  No interest will be paid on Class 6 General Unsecured Claims.  The first annual payment will be paid six (6) months from the entry of the Confirmation Order with the remaining four (4) annual payments being paid on the same calendar date of each respective subsequent year.  This will amount to payments of $53,000.00 over the course of the plan.  The payment proposed to unsecured creditors amounts to a 51.57% distribution.  The claim amount of any creditor that options to a Class 7 Creditor will still be used in the disbursement calculation to the remaining Class 6 creditors.  In other words, Class 6 creditors will only receive a disbursement of 51.57% of their timely filed claims.

### Class 7: Convenience Class for General Unsecured Claims:

Any General Unsecured Creditor listed in Class 6 may voluntarily change its classification to a Class 7 claim by completing and returning the Class 7 Option Form which will be mailed to all Class 6 creditors.  Any Class 6 creditor that wishes to convert to a Class 7 creditor must return the Class 7 Option Form to Debtor's Attorney via regular mail, email or fax on or before the deadline to vote on this plan.

The Debtor proposes to pay Class 7 Convenience Class General Unsecured Creditors TWENTY AND 00/100 (20.00%) PERCENT of their timely filed allowed claim amount in one lump sum payment in full satisfaction of the claim. No interest will be paid on Class 7 Convenience Class for General Unsecured Claims. This payment will be paid within ninety (90) days from the entry of the Confirmation Order. No other payment will be made to this class. This class is impaired.

**Disputed Claims:**

All claims listed by the Debtor in the schedules in which no proof of claim has been filed are disputed, will not be recognized and will not receive any payments. Through voluntary agreement between Mark Comeaux and Lisa Comeaux, Individually and on behalf of their minor child, David Comeaux, and David Comeaux individually, and Mark Ralph Tammariello, Leslie Tammariello, individually and on behalf of their minor child Mark Rafaele Tammariello and Mark Rafaele Tammariello individually, any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, of Mark Ralph Tammariello, Leslie Tammariello, individually and on behalf of their minor child Mark Rafaele Tammariello and Mark Rafaele Tammariello individually (hereinafter sometimes referred to as "Tammariello") are fully, finally and forever resolved and settled as set forth herein in exchange for the allowance of a $23,300.00 general unsecured proof of claim for Tammariello to be paid as a general unsecured creditor at the dividend of 51.57% under this plan. Upon confirmation of this case, Mark Comeaux and Lisa Comeaux, Individually and on behalf of their minor child, David Comeaux, and David Comeaux individually, shall be released and forever discharged from any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, that may be instituted against

any of them by Mark Ralph Tammariello, Leslie Tammariello, individually and on behalf of their minor child Mark Rafaele Tammariello and Mark Rafaele Tammariello individually, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana.

Upon confirmation of this case, David Comeaux individually, shall also be released and forever discharged from any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, that may be instituted against David Comeaux individually when David Comeaux attains the age of majority, by Mark Ralph Tammariello and Leslie Tammariello individually and on behalf of their minor child, Mark Rafaele Tammariello and Mark Rafaele Tammariello individually, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana.

Upon confirmation of this case, David Comeaux individually, shall also be released and forever discharged from any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, that may be instituted against him as a minor or as a person of the age of majority, by Mark Rafaele Tammariello when Mark Rafaele Tammariello attains the age of majority, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their

minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana.

Upon confirmation of this case, a permanent injunction shall be imposed against Mark Ralph Tammariello, Leslie Tammariello and Mark Rafaele Tammariello permanently and forever baring and enjoining Mark Ralph Tammariello, Leslie Tammariello and Mark Rafaele Tammariello from pursuing any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana. The afore stated permanent injunction may be referred to herein as the "Permanent Injunction". The Permanent Injunction shall also be effective against Mark Rafaele Tammariello when he attains the age of majority, permanently and forever baring and permanently enjoining Mark Rafaele Tammariello from pursuing any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, that he may have in his capacity as a person being of the age of majority, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana. The Permanent Injunction shall also be effective to protect and be in favor of David Comeaux, the Debtors minor child, when he attains the age of majority, permanently and forever

baring and permanently enjoining Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello from pursuing any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, that he may have in his capacity as a person being of the age of majority, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana. The Permanent Injunction shall also be effective to protect and be in favor of David Comeaux, the Debtors' minor child when he attains the age of majority, permanently and forever baring and permanently enjoining Mark Rafaele Tammariello from pursuing any and all claims of any kind whatsoever, known and unknown, foreseeable or unforeseeable, realized or not realized, that he may have in his capacity as a person being of the age of majority, arising out of or related in any way to the Louisiana State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana The stay shall remain in place in regard to the State Court proceeding entitled Mark Ralph Tammariello and Leslie Tammariello on behalf of their minor child, Mark Rafaele Tammariello vs. Lisa Comeaux and Mark Comeaux, Individually and on behalf of their minor child, David Comeaux, Docket No. 2015-4915, 15th JDC, Lafayette Parish, Louisiana in regard to any claim for money damages. The sole exception to the Permanent Injunction is the relief from automatic stay as to injunctive relief previously granted by this Bankruptcy Court on the 31st day of March, 2016.

**CLAIMS NOT FILED:**

Claims not filed by the bar date will be disallowed and those creditors will not receive a distribution under the plan. The debt will be discharged at the completion of the plan. Any collateral held by a secured creditor, who does not file a claim, will be turned over to the debtor at the completion of the plan by surrender of any and all titles and/or proof of ownership free and clear of any liens, encumbrances and/or mortgages.

**c. Future Management and ownership**

COMEAUX will continue to maintain ownership of all assets.

**d. Creditors have the right to vote on the plan**

After reading this plan and disclosure statement, creditors will have the right to Vote on whether the Bankruptcy Court should "confirm" this plan. Each creditor should read this combined plan and disclosure statement carefully, discuss it with a lawyer, and then fill out the ballot, when provided. COMEAUX 's lawyer will assemble the ballots and report to the Bankruptcy Judge. At that time, the court will conduct a confirmation hearing in this case and decide whether to confirm the plan.

**e. Creditors also have the right to object to this Disclosure Statement and/or object to confirmation of the plan**

If a creditor believes that the Combined Plan and Disclosure Statement does not contain sufficient information to decide whether to vote for (or against) the plan, the creditor may file a written objection with the Bankruptcy Court. If a creditor believes that the plan does not meet the requirements of the Bankruptcy Code, then the creditor may also file a written objection with the Bankruptcy Court. The deadline for filing objections will be provided at a latter date.

**f. The Court may approve this plan and limit creditors' legal rights**

The Court will only consider ballots and written objections that are timely filed. If no objections are timely filed, or if the Court overrules all objections, and at least one class of creditors accepts the plan, the Court may approve the plan. If the Court approves the plan, all creditors will be bound, even if a creditor did not vote or even if a creditor voted against the plan. This means that a creditor will not be allowed to collect its claim against COMEAUX except as provided for in the plan.

**g. How does a class accept the plan?**

Each class is considered separately. Only the creditors who vote are counted. The Court will conclude that a class "accepts" the plan only if two requirements are met: 1) More than 50% of the voting creditors in that class vote in favor of the plan; and 2) Those creditors voting in favor of the plan hold at least 2/3 of the total amount of the debt that is voted.

**h. What if a creditor is not listed in This Plan**

All unsecured creditors who have filed a claim are listed herein. The proof of claim deadline has been set by the court. All unsecured claims that COMEAUX agrees to pay (or that are disputed) are listed. If a creditor's claim is not listed and/or a creditor fails to timely file a claim with the Bankruptcy Court, COMEAUX will not pay any money to that creditor, but that creditor's claim will nevertheless be discharged (that is, the creditor will not be allowed to collect any money from COMEAUX ). If a creditor believes this provision violates its legal rights, the creditor should contact a lawyer and file an objection with the Court.

**i. What to do for more information?**

Creditors should talk with a lawyer about their rights and responsibilities in this case. A creditor should have its lawyer call MARK CAREY AND LISA DUGAS COMEAUX 'S lawyer,

who may be contacted as follows:

> **Rodd C. Richoux**
> **Richoux Law Firm, L.L.C.**
> **110 E. Kaliste Saloom Road, Suite 205**
> **Lafayette, LA 70508**
> **337-269-8935**
> **rodd@richouxlawfirm.com**

If a creditor does not have a lawyer, he can call COMEAUX 's lawyers directly.

REMEMBER THAT COMEAUX's LAWYERS CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE THEY REPRESENT COMEAUX , NOT CREDITORS.

### j. Preferences and Fraudulent Transfers.

After a review of its records, COMEAUX does not believe that any actionable claims exist for preferences or fraudulent transfers against any insiders or any other persons. Thus, COMEAUX does not intend to pursue any preference or fraudulent conveyance causes of action after confirmation.

## 4. Does MARK CAREY AND LISA DUGAS COMEAUX have enough money and earnings to make the payments called for in the plan?

Yes. COMEAUX believes he will have sufficient income from employment to make payments to all creditors. COMEAUX has performed well during this Chapter 11 case and has sufficient income to make plan payments. COMEAUX history shows that she can make the payments.

Operating reports have been filed by the Debtor which reports include financial data since October 2015. The following is a summary of the monthly reports.

Summary of the operating reports:

| Month | Income | Expense | Net Income |
|-------|--------|---------|------------|

DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

Page 19 of 22

| | | | |
|---|---|---|---|
| October 2015 | $12,457.00 | $8,391.00 | $4,066.00 |
| November 2015 | $10,521.62 | $6,762.18 | $3,759.44 |
| December, 2015 | $18,824.97 | $9,711.94 | $9,113.03 |
| January, 2016 | $23,028.08 | $16,099.69 | $6,928.36 |
| February, 2016 | $6,307.99 | $5,750.00 | $   557.99 |
| March, 2016 | $21,597.81 | $13,485.82 | $8,111.99 |
| April, 2016 | $8,204.74 | $10,537.11 | ($2,332.37) |
| May, 2016 | $17,522.24 | $16,573.01 | $   949.23 |
| June, 2016 | $9,068.34 | $10,383.78 | ($1,315.44) |
| July, 2016 | $111,623.99 | $16,217.81 | $95,406.18 |
| August, 2016 | $11,291.93 | $17,456.37 | ($6,164.44) |
| September, 2016 | $16,024.08 | $16,101.34 | $     77.26 |
| October, 2016 | $14,268.10 | $15,625.15 | ($1,357.06) |
| November, 2016 | $12,838.48 | $12,528.94 | $   309.51 |

**5. Rejection of Executory Contracts and Unexpired Leases.**

The Debtors will reject the contract with Toyota Lease Trust c/o Toyota Motor Credit Corporation.

**6. Are there any alternatives to the plan?**

The only alternative is liquidation under Chapter 7 or dismissal of this case. In a liquidation scenario, unsecured creditors will receive the same as they are under this plan. Liquidation under Chapter 7 would also incur additional administrative costs, including fees for a Chapter 7 trustee and his/her lawyers and accountants, real estate agent, which could substantially reduce the value

of any distributions to creditors. Unsecured Creditors would receive at most the liquidation value of the estate less the additional Chapter 7 Administrative fees and costs which would be substantially less than what is being paid under this Chapter 11 Plan. The unsecured creditors will definitely receive 66.69% under the Chapter 11 Plan.

## 9. Is there any risk that the plan might not succeed?

The revenues derived from the Debtor's income may not be sufficient to make all payments due under the plan payments. There is some chance that COMEAUX may not be able to continue to work at the same pace he currently is but COMEAUX believes that he can pay creditors as per this plan and will try his utmost to ensure that all creditors are paid as per the plan.

## 10. Are there any tax effects from this plan?

Tax Effects for the Debtor: COMEAUX believes that it will suffer no unexpected tax effects from this plan or due to the fact that they have become insolvent.

Tax Effects to Creditors: COMEAUX also does not believe that Creditors will have any tax effects as a result of the filing of this Bankruptcy Proceeding or the confirmation of this plan. It is possible that some of the Creditors may be able to deduct some of COMEAUX debt as a bad debt expense but that would only be for certain creditors on an accrual accounting basis. However, each Creditor should consult with its own tax advisor to be sure.

## 11. <u>Please vote for this plan</u>

COMEAUX asks that creditors vote in favor of this plan.

RESPECTFULLY SUBMITTED,
MARK AND LISA COMEAUX


By: /s/ MARK  COMEAUX

By: /s/ LISA  COMEAUX

RICHOUX LAW FIRM, L.L.C.

By:  /s/ Rodd C. Richoux
RODD C. RICHOUX (#24624)
Attorney for COMEAUX
110 E. Kaliste Saloom Road, Suite 205
Lafayette, LA 70503
Phone (337) 269-8935
Fax: (337) 456-6299
Email: rodd@richouxlawfirm.com